[908 NE2d 869, 880 NYS2d 879]

MILIHA FERLUCKAJ, Respondent, v GOLDMAN SACHS & Co., Appellant, et al., Defendant. GOLDMAN SACHS & Co., Third-Party Plaintiff, v AMERICAN BUILDING MAINTENANCE Co., Third-Party Defendant.

Argued February 19, 2009; decided April 2, 2009

**POINTS OF COUNSEL**

*Wilson Elser Moskowitz Edelman & Dicker LLP,* New York City (*Christine Bernstock* of counsel), for appellant and third-party plaintiff. I. There was absolutely no evidence which established or indicated that Goldman Sachs & Co. had the right or authority to control the work performed by plaintiff. (*Guzman v L.M.P. Realty Corp.,* 262 AD2d 99; *Frierson v Concourse Plaza Assoc.,* 189 AD2d 609; *Bart v Universal Pictures,* 277 AD2d 4; *Sweeting v Board of Coop. Educ. Servs.,* 83 AD2d 103.) II. The work plaintiff performed at the time of her accident was pursuant to the contract between Paramount Group, Inc. and American Building Maintenance Co., to which Goldman Sachs & Co. was not a party. III. Plaintiff was the sole proximate cause of her own accident and, as such, the Labor Law § 240 (1) claim should have been dismissed. (*Broggy v Rockefeller Group, Inc.,* 8 NY3d 675; *Montgomery v Federal Express Corp.,* 4 NY3d 805.)

*Michael J. Gaffney,* Staten Island, for respondent. I. There are questions of fact as to whether Goldman Sachs & Co. had

the right or authority to control the work performed by plaintiff. (*Bart v Universal Pictures,* 277 AD2d 4.) II. Plaintiff was not the sole proximate cause of her own accident and as such Labor Law § 240 (1) claims should not have been dismissed. (*Balbuena v New York Stock Exch., Inc.,* 45 AD3d 279; *Blake v Neighborhood Hous. Servs. of N.Y. City,* 1 NY3d 280; *Swiderska v New York Univ.,* 10 NY3d 792; *Broggy v Rockefeller Group, Inc.,* 8 NY3d 675.)

*Thomas J. Maroney,* Jericho, *Fiedelman & McGaw* (*Andrew Zajac* and *Dawn C. DeSimone* of counsel), *Rona L. Platt,* Uniondale, and *Brendan T. Fitzpatrick,* Albertson, for Defense Association of New York, Inc., amicus curiae. I. The Legislature did not envision that Goldman Sachs & Co.'s status as merely a lessee would expose it to liability as that of an "owner" under Labor Law § 240 (1), and this Court should dismiss the action against it. (*Whelen v Warwick Val. Civic & Social Club,* 47 NY2d 970; *Zimmer v Chemung County Performing Arts,* 65 NY2d 513; *Russin v Louis N. Picciano & Son,* 54 NY2d 311; *Copertino v Ward,* 100 AD2d 565; *Wendel v Pillsbury Corp.,* 205 AD2d 527; *Guzman v L.M.P. Realty Corp.,* 262 AD2d 99; *Bart v Universal Pictures,* 277 AD2d 4; *Zaher v Shopwell, Inc.,* 18 AD3d 339; *Lacey v Long Is. Light. Co.,* 293 AD2d 718; *Billman v CLF Mgt.,* 19 AD3d 346.) II. Plaintiff's actions were the sole proximate cause of the accident. (*Blake v Neighborhood Hous. Servs. of N.Y. City,* 1 NY3d 280; *Narducci v Manhasset Bay Assoc.,* 96 NY2d 259; *Robinson v East Med. Ctr., LP,* 6 NY3d 550; *Montgomery v Federal Express Corp.,* 4 NY3d 805; *Egan v Monadnock Constr., Inc.,* 43 AD3d 692; *Stark v Eastman Kodak Co.,* 256 AD2d 1134; *Cahill v Triborough Bridge & Tunnel Auth.,* 4 NY3d 35.)

## OPINION OF THE COURT

SMITH, J.

Plaintiff fell off a desk on which she was standing while cleaning the inside of an office building window, in space leased to defendant Goldman Sachs & Co. We hold that, because uncontroverted evidence shows that Goldman did not hire plaintiff's employer to clean the window and that Goldman exercised no control over plaintiff's work, Goldman is not liable to plaintiff under Labor Law § 240 (1). Supreme Court and the Appellate Division erred in denying Goldman's motion for summary judgment.

The building in question is at 32 Old Slip, in Manhattan. Goldman leased a number of floors from the building's owner,

Paramount Group, Inc. Paramount hired third-party defendant, American Building Maintenance Co. (ABM), to provide cleaning and janitorial services. Among ABM's duties under its contract with Paramount was to clean the building's windows every three months. Tenants, including Goldman, could and sometimes did contract directly with ABM for "special services," but window cleaning was not treated as a special service. It was provided by Paramount to Goldman in exchange for the rent.

Plaintiff, an ABM employee, fell while she was cleaning a window on a floor that Goldman had not yet occupied. Goldman was scheduled to, and did, begin moving in on the day after the accident. Plaintiff claims, and we assume it to be true, that the cleaning she was working on was not a regular quarterly cleaning, but a special "preoccupancy" cleaning, to get the space ready for Goldman's use. Preoccupancy cleanings, however, were also provided for in the Paramount-ABM contract, which requires ABM to provide such cleanings without extra cost to Paramount: "Prior to tenant occupancy, contractor shall provide the initial cleaning or [sic] all interior windows for which there will be no charge to Paramount Group, Inc. or tenant."

There is no evidence in the record that Goldman hired ABM to perform either a regular quarterly cleaning or a preoccupancy cleaning. The contractor that Goldman used to do renovation work on the space, defendant Henegan Construction Co., Inc., did not subcontract any work to ABM.

In sum, the evidence points clearly and without contradiction to the conclusion that it was Paramount, not Goldman, that hired ABM to do the project on which plaintiff was working when she fell. Plaintiff does not claim that Goldman in fact supervised her work. Goldman therefore has no liability to plaintiff under Labor Law § 240 (1). The statute says:

> "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

■ This statute places a duty on "contractors and owners and their agents." It says nothing about lessees. That does not necessarily mean lessees can never be liable. Appellate Division cases have said that lessees who hire a contractor, and thus have the right to control the work being done, are "owners" within the meaning of the statute (*Frierson v Concourse Plaza Assoc.*, 189 AD2d 609, 611 [1st Dept 1993]; *Sweeting v Board of Coop. Educ. Servs.*, 83 AD2d 103, 114 [4th Dept 1981]; *cf. Bart v Universal Pictures*, 277 AD2d 4, 6 [1st Dept 2000] [occupant of space with power to control the work held "an agent of the fee owner"]). We assume, without deciding, that these cases are right, but they do not apply here. ABM was hired by the landlord, Paramount, not by Goldman, so there is no basis for holding Goldman to be an owner or owner's agent (*see Guzman v L.M.P. Realty Corp.*, 262 AD2d 99 [1st Dept 1999]).

Plaintiff concedes that she cannot prevail if Goldman had no right to control ABM's work, but she says that the facts are not clear enough to justify granting Goldman summary judgment. She points out that, under the contract between Paramount and ABM, preoccupancy cleaning was to be done "upon request of Paramount," and notes that the record contains no direct evidence of a "request." Though it is clear that Goldman's contractor, Henegan, did not hire ABM to do this work, plaintiff speculates that, for some reason, Goldman might have done so directly. Plaintiff emphasizes that Goldman did not submit an affidavit denying that such a transaction occurred.

■ We find plaintiff's theorizing—and the somewhat more elaborate theories offered by the dissent—insufficient to defeat summary judgment. The idea that Goldman chose to hire ABM at its own expense, when ABM was already contractually obligated to Paramount to do the work for free, is farfetched. And if that did happen, plaintiff had an ample opportunity to show it. After taking discovery, she has unearthed no record of any payment for this service from Goldman to ABM, or any relevant communication between the two.

The burden of a party moving for summary judgment is to "make a prima facie showing of entitlement to judgment as a matter of law" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The moving party need not specifically disprove every remotely possible state of facts on which its opponent might win the case. Goldman's showing here was adequate to shift the burden to plaintiff "to produce evidentiary proof . . . sufficient to establish the existence of material issues of fact" (*id.*). Plaintiff has not carried that burden.

Accordingly, the order of the Appellate Division should be reversed, with costs, summary judgment granted dismissing the complaint as against Goldman Sachs & Co., and the certified question answered in the negative.

PIGOTT, J. (dissenting). We have held time and time again that summary judgment should not be granted when there is "any doubt" (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]) as to the existence of a triable issue or when the issue is "arguable" (*id.*; *Barrett v Jacobs*, 255 NY 520, 522 [1931]). "[I]f the issue is fairly debatable a motion for summary judgment must be denied" (*Stone v Goodson*, 8 NY2d 8, 12 [1960]). In other words, if it is reasonable to disagree about the material facts or about what may be inferred from undisputed facts, summary judgment may not be granted. Moreover, in deciding whether there is a material triable issue of fact, "the facts must be viewed in the light most favorable to the nonmoving party" (*Matter of Council of City of N.Y. v Bloomberg*, 6 NY3d 380, 401 [2006], citing *Matsushita Elec. Industrial Co. v Zenith Radio Corp.*, 475 US 574, 587 [1986]). It follows that a split decision, such as this one, in which appellate judges disagree about what disputed facts may be inferred from undisputed facts, should be extremely rare.

A summary judgment motion is governed by a well-established shifting of the burden of proof. The movant's failure to make a prima facie showing of entitlement to judgment as a matter of law "requires a denial of the motion, regardless of the sufficiency of the opposing papers" and it is only if the movant succeeds in making this showing that the burden shifts to the party opposing the motion (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Here, Goldman Sachs failed to sustain its initial burden of making a prima facie showing of entitlement to summary judgment.

Under New York case law that the majority does not question, a lessee is liable pursuant to Labor Law § 240 (1) if it has "the right to control the work being done" (majority op at 320, citing *Sweeting v Board of Coop. Educ. Servs.*, 83 AD2d 103, 114 [4th Dept 1981], *lv denied* 56 NY2d 503 [1982]; *Frierson v Concourse Plaza Assoc.*, 189 AD2d 609, 611 [1st Dept 1993]; *Bart v Universal Pictures*, 277 AD2d 4, 5 [1st Dept 2000]). The key question is whether "defendant had the right to insist that proper safety practices were followed . . . it is the right to control the work that is significant, not the actual exercise or nonexercise of control" (*Copertino v Ward*, 100 AD2d 565, 567

[2d Dept 1984], citing *Sweeting*, 83 AD2d at 114). "[E]vidence that the lessee actually hired the general contractor" is relevant to establishing the right to control, as are "contractual or statutory provisions granting such right" (*Bart*, 277 AD2d at 5). The question for this Court is whether Goldman tendered sufficient evidence to eliminate any issue of fact concerning whether it had the right to control plaintiff's work. In my view, it did not.

Here, the majority relies exclusively on one document, a "Services Agreement" between Paramount Group, Inc., the building's owner, and American Building Maintenance Co. (ABM), entered into as of June 1, 1997. An appendix to the contract, titled "EXHIBIT 'C' SPECIFICATIONS"—describing the "base building cleaning specifications" in regard to window cleaning—provides that "[p]rior to tenant occupancy, [ABM] shall provide the initial cleaning [of] all interior windows for which there will be no charge to Paramount Group, Inc. or tenant. Work to be performed upon request of Paramount Group Inc." The majority infers from this single provision that Ferluckaj, who was cleaning the interior side of an exterior window, just prior to occupancy by Goldman, was doing so pursuant to Paramount's orders. This inferential leap cannot be reconciled with the well-established standards of summary judgment outlined above.

The majority writes that "[t]he idea that Goldman chose to hire ABM at its own expense, when ABM was already contractually obligated to Paramount to do the work for free, is far-fetched" (majority op at 320). I cannot agree. Far from answering the dispositive question, of who ordered the cleaning, as a matter of law, the Services Agreement raises several questions. Contrary to the majority's suggestion that window cleaning was not treated as a special service that tenants could contract directly with ABM for (majority op at 319), the Services Agreement expressly states, in a section titled "SPECIAL SERVICES REQUIRED BY TENANTS," that "[a]dditional window cleaning" is one of the extra services that tenants may request and for which they will be directly charged by ABM.

At his deposition, Robert Barriero, a corporate services vice-president at Goldman, testified that in his understanding "[a]dditional window cleaning" referred to the cleaning of "[i]nterior glass," such as might be found in an interior doorway. And he insisted that, while Goldman hired ABM directly during occupancy to perform additional cleaning and maintenance services such as carpet cleaning and pantry maintenance, it did not

hire ABM to do any window cleaning. Barriero's testimony is, however, of limited value with respect to preoccupancy events. His knowledge of the "base building cleaning specifications" and the "special services" was confined to their postoccupancy implementation. In fact, Barriero admitted he was unaware of the preoccupancy renovations.

Barriero's testimony was of limited use for another reason—Goldman outsourced its management services at the time in question to a company, Hines Interests Limited, that entered into and maintained all the contracts for services provided to Goldman at the building. Hines, as Goldman's agent, entered into contracts for services not provided by the base building cleaning specifications contract, including the additional postoccupancy cleaning and maintenance services. Barriero testified that, if there were records concerning the purchase of additional ABM cleaning services by Goldman, they would not be in his possession. It remains undisputed that, under the Services Agreement, special window cleaning by ABM could be separately contracted for.

The Services Agreement is puzzling in another way. As the majority notes, ABM's postoccupancy duties included cleaning the building's windows once every three months. The pertinent provision states that ABM shall "[w]ash and clean all interior and exterior of windows and frames . . . on every floor every three (3) months." By contrast, the preoccupancy provision specifies "all interior windows," omitting the possessive. As the majority reads it, the contract envisages three-monthly cleaning of the interior and exterior sides of all windows, plus an initial preoccupancy cleaning that would include the *interior sides of exterior windows*. This is a reasonable interpretation, but it is by no means the only reasonable one.

An alternative reading of the agreement is both literal and plausible. It is that there will be three-monthly cleaning of the interior and exterior sides of all windows, plus an initial preoccupancy cleaning of *interior windows*—glass panels neither side of which is outside the building. These would be precisely the windows that Barriero testified would not be included in "base building cleaning" and would normally be the subject of a separate contract between tenant and ABM. This interpretation makes sense of the clause that provides that "there will be no charge to Paramount Group, Inc. or tenant" for this cleaning. Since the context is a list of base building cleaning services that are provided to tenants at the owner's expense, the added

language specifying that there will be no charge in this one instance is odd. It is explicable if it refers to a service that would normally, postoccupancy, be regarded as an additional service to be paid by the tenant. I conclude that it is reasonable to doubt whether the Services Agreement provided for preoccupancy cleaning of the interior sides of exterior windows.

Moreover, under the Services Agreement, the *only* preoccupancy cleaning of any kind that ABM contracted to do was "the initial cleaning [of] all interior windows." That seems a peculiar choice of item to clean prior to a tenant moving in. One would expect an owner to require the cleaning service it contracts with to carry out further services, such as carpet shampooing, wall washing and dusting, before a tenant moves in. Moreover, Goldman retained defendant Henegan Construction Co., Inc., as construction manager, to supervise a "complete renovation" of the floor on which Ferluckaj's accident occurred, prior to occupancy. The accident occurred after the renovation and immediately before occupancy. In these circumstances, unless Henegan and its subcontractors could be relied on to clean up the dust and dirt that their work created (as opposed to the large pieces of debris associated with construction work that laborers would normally remove themselves), extensive cleaning would have to be performed by ABM. In short, there was a large amount of preoccupancy cleaning that ABM was not contractually obliged to do, under the Services Agreement, but which any corporate tenant would surely have expected.

Either the Services Agreement incompletely describes the responsibilities of ABM or tenants contracted separately with ABM for preoccupancy cleaning. We do not know whether Goldman had to hire ABM at its own expense to clean carpets, walls, doors and ceilings, between the renovation and occupancy. (Goldman was required by its lease to use ABM for any additional cleaning services.) If it did, it likely contracted with ABM for preoccupancy cleaning of the interior sides of exterior windows, including those Ferluckaj was cleaning when she fell. I note that ABM was accustomed to doing additional window cleaning work, over and above the base building specifications. Al Hoti, an ABM manager, testified that, although the postoccupancy cleaning of the interior sides of exterior windows was part of base building cleaning, nevertheless "it all depends how many cycles [of cleaning] the contract calls for . . . if a tenant requests . . . more cleaning, then [ABM] can get more cleaning done."

We simply do not know which contract governed Ferluckaj's cleaning, because discovery did not answer that question. This would be a very different case if Goldman had produced an affidavit stating that the cleaning was done pursuant to the Services Agreement. Then Ferluckaj, if she failed to respond to that affidavit, might be deemed to admit it (*Kuehne & Nagel v Baiden*, 36 NY2d 539, 544 [1975]). But Goldman produced no such affidavit, and, as noted above, the relevant deposition testimony mainly concerned postoccupancy events, shedding no light on who ordered the preoccupancy cleaning.

Because, having read the Services Agreement, as well as the deposition transcripts and affidavits submitted by the parties in their summary judgment motions, I still have considerable "doubt" (*Sillman*, 3 NY2d at 404) as to whether Goldman had the right to control Ferluckaj's work, I would affirm the order of the Appellate Division, deny so much of Goldman's motion as sought summary judgment dismissing Ferluckaj's Labor Law § 240 (1) claim, and answer the certified question in the affirmative.

I conclude by noting that I would expect the majority opinion in this case to have fairly limited precedential value. This is a fact-specific area of law in which almost every case is sui generis.

Judges GRAFFEO, READ and JONES concur with Judge SMITH; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Chief Judge LIPPMAN and Judge CIPARICK concur.

Order reversed, with costs, that part of defendant Goldman Sachs & Co.'s motion seeking summary judgment dismissing plaintiff's Labor Law § 240 (1) claim granted, complaint against Goldman Sachs & Co. dismissed in the entirety, and certified question answered in the negative.