| |
|---|
| **Isaacs v Thor 180 Livingston LLC** |
| 2025 NY Slip Op 30158(U) |
| January 8, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 514918/19 |
| Judge: Heela D. Capell |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 19 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the ⟍ day of January, 2025.

P R E S E N T:

HON. HEELA D. CAPELL,

               Justice.

-----------------------------------------------------------------------X

DERRICK W. ISAACS,

               Plaintiff,

      -against-

THOR 180 LIVINGSTON LLC, and THE BROOKLYN TABERNACLE FOUNDATION, INC.,

               Defendants.

-----------------------------------------------------------------------X

THOR 180 LIVINGSTON LLC,

               Third-Party Plaintiff,

      -against-

WATERMARK CONTRACTORS, INC. and IPEX PLUMBING AND HEATING CORPORATION,

               Third-Party Defendants.

-----------------------------------------------------------------------X

THE BROOKLYN TABERNACLE FOUNDATION, INC.,

               Second Third-Party Plaintiff,

      -against-

WATERMARK CONTRACTORS, INC. and IPEX PLUMBING AND HEATING CORPORATION, CORP.,

               Second Third-Party Defendants.

-----------------------------------------------------------------------X

Index No.: 514918/19

[* 1]

The following e-filed papers read herein:                    NYSCEF Doc Nos.:

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and                                    98, 116-118, 172-174
Affidavits (Affirmations) Annexed_____            205-206, 211-212, 216
                                                             141-142, 169-170, 171
Opposing Affidavits (Affirmations)_____           226, 227, 228, 229, 230, 231
Affidavits/ Affirmations in Reply _____            225, 232, 233, 234-235


Upon the foregoing papers, plaintiff Derrick Isaacs ("Plaintiff") moves for an order, pursuant to CPLR 3212, granting him partial summary judgment in his favor with respect to liability on his Labor Law §§ 200, 240 (1), and 241 (6) causes of action as against defendants (motion sequence number 3). Defendant/third-party plaintiff Thor 180 Livingston LLC (Thor) and defendant/second third-party plaintiff The Brooklyn Tabernacle Foundation (Brooklyn Tabernacle) (collectively, "Defendants") move for an order, pursuant to CPLR 3212, granting them summary judgment in their favor on their contractual indemnification causes of action as against third-party defendants/second third-party defendants Watermark Contractors, Inc., (Watermark) and Ipex Plumbing and Heating Corporation (Ipex) (motion sequence number 5). Ipex cross-moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing plaintiff's complaint (motion sequence number 6).[1] Ipex also cross-moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the third-party and second third-party complaints as against it (motion sequence number 7). Finally, although Defendants failed to serve or file a notice of cross-motion, they identified their opposition to Plaintiff's motion as a cross-motion to dismiss the complaint. Plaintiff has not been prejudiced by

---

[1] The court notes that Ipex, by way of a so-ordered stipulation dated March 13, 2024 (NY St Cts Elec Filing [NYSCEF] Doc No. 223), withdrew the motion that had been denominated motion sequence number 4.

2

the absence of a notice of motion as he has submitted opposition to Defendants' papers. This court, accordingly, will treat Defendants' opposition papers as a cross-motion to dismiss Plaintiff's complaint despite the failure to serve a notice of motion (CPLR 2001; *Brady v White*, 168 AD3d 723, 724 [2d Dept 2019]; *Fried v Jacob Holding, Inc.*, 110 AD3d 56, 65-66 [2d Dept 2013]).[2]

## Background

Plaintiff Derrick Isaacs pleads causes of action premised on common-law negligence and violations of Labor Law §§ 200, 240 (1) and 241 (6) based on injuries he alleges he suffered on January 14, 2019 while removing a 4-inch pipe that was suspended from the ceiling of a building undergoing renovation. The pipe swung down from the ceiling, struck the ladder on which Plaintiff was standing, and caused him to fall to the ground. The building was owned by Thor, and Thor leased a portion of a commercial condominium unit to Brooklyn Tabernacle. Brooklyn Tabernacle hired Watermark to act as a general contractor on the project to gut-renovate the leased space. Watermark, in turn, hired Ipex to remove and replace the plumbing, sprinkler pipes, and fixtures. Plaintiff, at his deposition, testified that he was employed by Ipex. However, Plaintiff has also submitted copies of Workers' Compensation Board (Board) determinations that identify Watermark as Plaintiff's employer at the time of the accident.[3]

---

[2] Additionally, the court notes that Plaintiff, in his own motion, sought partial summary judgment on each of his Labor Law causes of action. As such, the issues raised in Defendant's cross-motion are already before the court as part of plaintiff's motion and could be decided in Defendants' favor in searching the record (CPLR 3212 [b]).

[3] In the decision attached as NYSCEF Doc No. 103, the Board noted that Plaintiff's supervisor Frank Pagan testified that, as of late 2018, Ipex was not paying its workers, and that Watermark effectively subsumed Ipex's workers and took over Ipex's role in the project. This decision, as well as a subsequent Board determination filed on December 9, 2020 (NYSCEF Doc No. 108), identifies Watermark as plaintiff's employer.

3

According to Plaintiff's deposition testimony, on the date of the accident, Plaintiff's supervisor directed him to take down a 10-foot-long section of a four-inch waste pipe that weighed approximately 100 pounds. This section of pipe hung from the concrete ceiling by a hanger attached to the pipe and connected to the ceiling attachments by a threaded rod.[4] One end of the pipe was connected to another pipe by way of a coupling. The other end of the pipe had already been disconnected before Plaintiff started working on it. Plaintiff estimated that the ceiling was approximately 10 feet above the floor and that the pipe was approximately 8 feet above the floor.

Plaintiff obtained a six-foot tall A-frame ladder from Ipex's work shanty and went to the pipe's location with a coworker who was acting as his helper. Plaintiff did not observe any defects with the ladder and the footing on which he placed the ladder was solid. Plaintiff placed the ladder so that it was to the side of the pipe—not directly under it—and climbed up to the third step, which he estimated was three to four feet above the ground. After unscrewing the screws to the pipe's coupling and removing a metal sleeve, Plaintiff started to peel back a rubber coupling when the threaded rods attached to the pipe's hanger pulled out of the ceiling and the pipe swung down. The pipe missed Plaintiff and the ladder as it first swung down; it then swung back and hit the ladder, causing Plaintiff and the ladder to fall to the ground. At the time of the accident, Plaintiff's coworker was standing on the ground approximately five feet from Plaintiff. Plaintiff asserts that if the pipe had not fallen, Plaintiff's coworker would have obtained

---

[4] Although Plaintiff stated that there were two hangers connected to the section of pipe he cut at his February 15, 2022 deposition, at his March 9, 2022 deposition, Plaintiff, upon viewing the photographs of the accident location, stated that the pipe that fell was supported only by a single hanger.

[* 4]

another ladder to assist Plaintiff in lowering the pipe to the ground by hand. Prior to starting the work, Plaintiff had not noticed any obvious defects with the pipe's hanger. Plaintiff was not aware of a pipe coming loose in this manner while he was working at the project site.

## DISCUSSION

### *Labor Law § 240 (1)*

Labor Law § 240 (1) imposes absolute liability on owners and contractors or their agents when they fail to protect workers employed on a construction site from injuries proximately caused by risks associated with falling from a height or those associated with falling objects (*see Wilinski v 334 East 92nd Housing Dev. Fund Corp.*, 18 NY3d 1, 7 [2011]; *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267-268 [2001]; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]). The facts here involve a falling object and a worker falling from a ladder. For accidents involving falling objects, the "plaintiff must show more than simply that an object fell causing injury to a worker" (*Narducci*, 96 NY2d at 268; *see also Fabrizi v 1095 Ave. of Ams., L.L.C.*, 22 NY3d 658, 663 [2014]). A plaintiff must show that, at the time the object fell, it was "being hoisted or secured" (*Narducci*, 96 NY2d at 268) or "required securing for the purposes of the undertaking" (*Outar v City of New York*, 5 NY3d 731, 732 [2005]; *see Quattrocchi v F.J. Sciame Constr. Corp.*, 11 NY3d 757, 758 [2008]) and that the object fell "because of the absence or inadequacy of a safety device of the kind enumerated in the statute" (*Narducci*, 96 NY2d at 268; *see Fabrizi*, 22 NY3d at 663; *Wilinski*, 18 NY3d at 10-11). The Appellate Division, Second Department has emphasized that "[t]he mere fact that a

5

plaintiff fell from a ladder does not, in and of itself, establish that proper protection was not provided" (*Karanikolas v Elias Taverna, LLC*, 120 AD3d 552, 555 [2d Dept 2014] [internal quotation marks omitted]; *see Cutaia v Board of Mgrs. of the 160/170 Varick St. Condominium*, 38 NY3d 1037, 1038-1039 [2021]; *Orellana v 7 W. 34th St., LLC*, 173 AD3d 886, 888 [2d Dept 2019]). In order to find the absence of proper protection, "[t]here must be evidence that the ladder was defective or inadequately secured and that the defect, or the failure to secure the ladder, was a substantial factor in causing the plaintiff's injuries" (*Karanikolas*, 120 AD3d at 555 [internal quotation marks omitted]; *Hugo v Sarantakos*, 108 AD3d 744, 745 [2d Dept 2013]).

Applying the law to the facts here, Plaintiff's testimony that the ladder moved and fell after being struck is sufficient to demonstrate Plaintiff's prima facie entitlement to summary judgment (*see Mora v 1-10 Bush Term. Owner, L.P.*, 214 AD3d 785, 786 [2d Dept 2023]; *Robinson v Bond St. Levy, LLC*, 115 AD3d 928, 929 [2d Dept 2014]; *Vega v Renaissance 632 Broadway, LLC*, 103 AD3d 883, 885 [2d Dept 2013]; *Durmiaki v International Bus. Machs. Corp.*, 85 AD3d 960, 960-961 [2d Dept 2011]; *see also Jara-Salazar v 250 Park, LLC*, 231 AD3d 674, 674 [1st Dept 204]; *Rivera v 712 Fifth Ave. Owner LP*, 229 AD3d 401, 402 [1st Dept 2024]; *Cevallos v WBB Constr., Inc.*, 227 AD3d 657, 658-659 [2d Dept 2024]; *Calloway v American Park Place, Inc.*, 221 AD3d 1473, 1473-1474 [4th Dept 2023]). The fact that the ladder was stable and had no obvious defects is immaterial to whether a statutory violation occurred as here the evidence shows that the ladder was inadequately secured and/or was not properly placed (*see Mora*, 214 AD3d at 786; *see also Calloway*, 221 AD3d at 1474; *Yaucan v*

6

[* 6]

*Hawthorne Village, LLC*, 155 AD3d 924, 925-926 [2d Dept 2017] [if a device in and of itself is not sufficient to provide protection, the availability of a particular device will not preclude a finding of liability]). Additionally, this court finds that plaintiff's testimony demonstrates, prima facie, that section 240 (1) was violated by the failure to provide any safety devices to secure the pipe while it was being removed (*see Jara-Salazar*, 231 AD3d at 674; *Franco v 1221 Ave. Holdings, LLC*, 189 AD3d 615, 615 [1st Dept 2020]; *Aguilar v Graham Terrace, LLC*, 186 AD3d 1298, 1301 [2d Dept 2020]; *Tylutki v Tishman Tech.*, 7 AD3d 696, 696 [2d Dept 2004], *lv dismissed* 3 NY3d 702 [2004]; *cf. Carranza v JCL Homes, Inc.*, 210 AD3d 858, 859 [2d Dept 2022]).[5]

In opposition and in support of their own cross-motion, Defendants submit an affidavit form Greg Rendon, a Watermark superintendent, who states that he was present on worksite at the time of the accident, and, when he was informed of the accident, he went to the location where it occurred. Rendon adds that, "[b]ased on my inquiry and observation I learned that the plaintiff was injured when a sprinkler pipe that he had cut, fell and struck his ladder." Rendon also states that, "the portion of the sprinkler pipe [plaintiff] cut was not supported by a pipe hanger, and the failure of such a hanger was not involved in the plaintiff's accident." Defendants also submitted an affidavit from an engineer, who relied on Rendon's affidavit, the photographs of the accident location that were appended to the accident report, and his engineering and construction experience.

---

[5] There is no real dispute that Thor, which concededly owned the space at issue, may be held liable under Labor Law § 240 (1) (*see Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559-560 [1993]; *Chuqui v Cong. Ahavas Tzookah V'Chesed, Inc.*, 226 AD3d 960, 962 [2d Dept 2024]). Brooklyn Tabernacle, the lessee of the space at issue, may also be held liable under section 240 (1) as an owner since it contracted for the work at issue (*see Rizo v 165 Eileen Way, LLC*, 169 AD3d 943, 946 [2d Dept 2019]; *Wendel v Pillsbury Corp.*, 205 AD2d 527, 528-529 [2d Dept 1994]; *see also Ferluckaj v Goldman Sachs & Co.*, 12 NY3d 316, 319-320 [2009]).

7

This engineer asserted that the portion of the pipe did not have a coupling in the section at issue, suggesting that the pipe was cut and that there was no hanger on the section of the cut pipe. Based on these assertions, the engineer opined that plaintiff did not follow accepted demolition practice in having a helper support the pipe while he was cutting it, and that he did not otherwise properly secure the pipe. The engineer concluded that there was no violation of Labor Law § 240 because the hangers were present and were properly spaced and that plaintiff required no additional safety devices to perform his task. Based on this evidence, defendants assert that there was no section 240 (1) violation because the ladder was an adequate safety device, and because plaintiff's actions constituted the sole proximate cause of the accident.

Assuming, without deciding, that the photographs and affidavits from Rendon and Defendants' engineer may be considered despite Plaintiff's objections, they fail to demonstrate an issue of fact. Most notably, the assertions of Rendon and the Defendants' engineer do not address the showing that the ladder was improperly placed and/or inadequately secured (cf. Mora, 214 AD3d at 786; Canas v Harbour at Blue Point Home Owners Assn., Inc., 99 AD3d 962, 963-964 [2d Dept 2012]). Any failure of Plaintiff to have his coworker support the pipe while Plaintiff cut it cannot constitute the sole proximate cause of the accident, because people are not safety devices (see Jara-Salazar, 231 AD3d at 674-675; Iuculano v City of New York, 214 AD3d 535, 536 [1st Dept 2023]; Grant v City of New York, 109 AD3d 961, 962-963 [2d Dept 2013]). While Defendants assert that "numerous" safety devices were available for plaintiff's use, they fail to identify any devices that were available to secure Plaintiff's ladder or to secure the pipe

8

[* 8]

while Plaintiff worked on it. Further, Plaintiff's failure to use any such available device cannot constitute the sole proximate cause of the accident because Defendants have not shown that plaintiff had been instructed to use any of these devices (*see Gallagher v New York Post*, 14 NY3d 83, 88 [2010]; *Durmiaki*, 85 AD3d at 961; *see also Estrella v ZRHLE Holdings, LLC*, 218 AD3d 640, 649 [2d Dept 2023]).

Ipex has incorporated by reference Defendants' arguments in support of its own motion for summary judgment dismissing plaintiff's Labor Law § 240 (1) claim, and also argues that the use of a protective device to support the pipe while Plaintiff was cutting it would have been contrary to the objective of the work which was the demolition and removal of the pipe. Ipex, however, has not submitted any evidentiary support for this contention. Indeed, it is unclear how securing the pipe could have been contrary to the work objectives in view of Plaintiff's testimony that he intended to lower the pipe to the ground with the assistance of his coworker *after* he had finished cutting the pipe. The assertions of Defendants' engineer, that Plaintiff should have secured the pipe before cutting it, likewise show that securing the pipe while it was being cut would not have been contrary to the objectives of the work (*see Jara-Salazar*, 231 AD3d at 674; *Guzman-Saquisili v Harlem Urban Dev. Corp.*, 231 AD3d 685, 686 [1st Dept 2024]; *Mayorga v 75 Plaza LLC*, 191 AD3d 606, 607 [1st Dept 2021], *lv dismissed* 37 NY3d 962 [2021]; *Ross v DD 11th Ave., LLC*, 109 AD3d 604, 605 [2d Dept 2013]; *see also Bazdaric v Almah Partners LLC*, 41 NY3d 310, 321 [2023]).[6]

---

[6] The court further notes that Defendants submitted an accident report in which, Frank Pagan, Plaintiff's supervisor, stated that Plaintiff should have secured the pipe before cutting it.

9

Finally, this court rejects Defendants' contention that Plaintiff's motion is premature as they have failed to demonstrate that further discovery might lead to relevant evidence or that facts essential to justify opposition to the motion were exclusively within Plaintiff's the knowledge and control (*see Valencia v Glinski*, 219 AD3d 541, 545-546 [2d Dept 2023]; *Robinson*, 115 AD3d at 929). Defendants and Ipex have failed to demonstrate factual issues to warrant denial of Plaintiff's motion on his Labor Law § 240 (1) cause of action. Accordingly, Plaintiff is entitled to partial summary judgment in his favor for liability on section 240 (1). The portion of Defendants' motion and Ipex's motion seeking dismissal of that cause of action is denied.

### Labor Law § 241 (6)

Under Labor Law § 241 (6), an owner, general contractor or their agent may be held vicariously liable for injuries to a plaintiff where the plaintiff establishes that the accident was proximately caused by a violation of an Industrial Code section stating a specific positive command that is applicable to the facts of the case (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 349-350 [1998]; *Honeyman v Curiosity Works, Inc.*, 154 AD3d 820, 821 [2d Dept 2017]). Here, in his bill of particulars, Plaintiff premised his section 241 (6) cause of action on violations of Industrial Code (12 NYCRR) §§ 23-1.7 (b), 23-1.7 (d), 23-1.21 (b), 23-2.1, 23-3.2 and 23-3.3. Defendants have demonstrated, prima facie, that sections 23-1.7 (b), 23-1.7 (d), 23-1.21 (b), and 23-2.1 are either inapplicable, were not violated, or were not a proximate cause of plaintiff's injuries (*see Dyszkiewicz v City of New York*, 218 AD3d 546, 548-549 [2d Dept 2023]). As Plaintiff has not addressed these code sections in his opposition papers, Defendants are entitled to

10

dismissal of the section 241 (6) cause of action to the extent it is premised on sections 23-1.7 (b), 23-1.7 (d), 23-1.21 (b), and 23-2.1 (*see Debennedetto Chetrit*, 190 AD3d 933, 936 [2d Dept 2021]; *Pita v Roosevelt Union Free Sch. Dist.*, 156 AD3d 833, 835 [2d Dept 2017]).

Plaintiff, however, does address Industrial Code (12 NYCRR) §§ 23-3.2 (b) and 23-3.3 (c). Nevertheless, section 23-3.2 (b),[7] is inapplicable here because it pertains to protecting the stability of adjacent structures, not the structure or building being demolished (*see Djuric v City of New York*, 172 AD3d 456, 457 [1st Dept 2019], *lv denied* 34 NY3d 910 [2020]; *Perillo v Lehigh Constr. Group, Inc.*, 17 AD3d 1136, 1138 [4th Dept 2005]). With respect to section 23-3.3 (c),[8] Defendants have demonstrated that it is inapplicable here. Even assuming that Plaintiff's work constitutes demolition work within the meaning of section 23-3.3 (c) (*see Estrella*, 218 AD3d at 548), "the hazard arose from the Plaintiff's actual performance of the demolition work itself, rather than from 'structural instability caused by the progress of the demolition'" (*Vega*, 103 AD3d at 885; quoting *Smith v New York City Hous. Auth.*, 71 AD3d 985, 987 [2d Dept 2010]; *see Flores v Crescent Beach Club, LLC*, 208 AD3d 560, 562 [2d Dept 2022]). Plaintiff has failed to raise an issue of fact with respect to the applicability or violation of these

---

[7] Section 23-3.2 (b), provides that, "Protection of adjacent structure. During the demolition of any building or other structure, the employer performing such demolition shall examine the walls of all buildings or other structures adjacent to the one which is to be demolished." If there is reason to believe that the adjacent structure may become unsafe, section 23-3.2 (b) requires that the adjacent structure be shored or otherwise protected to prevent its collapse.

[8] Section 23-3.3 (c) provides that, "Inspection. During hand demolition operations, continuing inspections shall be made by designated persons as the work progresses to detect any hazards to any person resulting from weakened or deteriorated floors or walls or from loosened material. Persons shall not be suffered or permitted to work where such hazards exist until protection has been provided by shoring, bracing or other effective means."

Industrial Code sections. Thus, Defendants are entitled to summary judgment dismissing the Labor Law § 241 (6) cause of action.

### *Labor Law § 200 and Common-Law Negligence*

Common-law negligence and Labor Law § 200 require that owners or general contractors supervise or control the work in order to impose liability when the claimed injury arises out of alleged defects or dangers in the methods or materials of the work. "There is no liability under the common law or Labor Law § 200 unless the owner or general contractor exercised supervision or control over the work performed" (*Carranza v JCL Homes, Inc.*, 210 AD3d 858, 860 [2d Dept 2022], quoting *Cun-En Lin v Holy Family Monuments*, 18 AD3d 800, 801 [2d Dept 2005]; *see Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 435 [2015]; *Valencia v Glinski*, 219 AD3d 541, 545 [2d Dept 2023]).[9] Here, through the deposition testimony of Plaintiff and other witnesses, Defendants have demonstrated they did not supervise or control Plaintiff's work and therefore may not be held liable for common-law negligence or for a violation of Labor Law § 200 under a means and methods theory of liability (*see Wilson v Bergon Constr. Corp.*, 219 AD3d 1380, 1383 [2d Dept 2023]; *Kefaloukis v Mayer*, 197 AD3d 470, 471 [2d Dept 2021]; *Lopez v Edge 11211, LLC*, 150 AD3d 1214, 1215-1216 [2d Dept

---

[9] Although Plaintiff notes that the court in *Ortega v Puccia* (57 AD3d 54, 62 n2 [2d Dept 2008]) stated that the standard for liability under Labor Law § 200 should be whether "defendant had the authority to supervise or control the work," the Court of Appeals has consistently stated that defendants may not be held liable where they "exercise[d] no supervisory control over the operation" ( *Ruisech v Structure Tone Inc.*, --- NY3d ---, 2024 NY Slip Op 05866, *1-2 [2024]; *Barreto*, 25 NY3d at 435). The issue of authority to control the work is an implicit precondition for the application of the duty to provide a safe workplace under section 200 and the common law (*see Russin v Louis N. Picciano & Son*, 54 NY2d 311, 316-317 [1981]). The Court of Appeals has held that liability may only be imposed upon the exercise of that authority (*see Ruisech*, 2024 NY Slip Op 05866, *1-2; *Barreto*, 25 NY3d at 435; *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877-878 [1993]).

2017]).[10] This court find that there is no issue of fact shown by testimony regarding Defendants' authority to stop the work, as such general supervisory authority is insufficient to demonstrate an issue of fact with respect to supervision and control of the means and methods of work (*see Murphy v 80 Pine, LLC*, 208 AD3d 492, 496 [2d Dept 2022]; *Abelleira v City of New York*, 201 AD3d 679, 680 [2d Dept 2022]; *Goldfien v County of Suffolk*, 157 AD3d 937, 938 [2d Dept 2018]; *Messina v City of New York*, 147 AD3d 748, 749-750 [2d Dept 2017]). Even if Defendants had exercised such authority on certain occasions, Plaintiff's testimony demonstrates that Defendants did not exercise any such authority with respect to the injury producing work at the time of the accident (*see McParland v Travelers Ins. Co.*, 302 AD2d 328, 328 [1st Dept 2003]).

The record also demonstrates, prima facie, that the accident occurred as the result of Plaintiff's means and methods of performing the work, rather than a preexisting dangerous condition (*see Turgeon v Vassar College*, 172 AD3d 1134, 1136 [2d Dept 2019], *lv denied* 34 NY3d 902 [2019]). The danger of the pipe falling was inherent in the very work plaintiff was to perform (*see Pacheco v Judlau Contr., Inc.*, 186 AD3d 1700, 1701 [2d Dept 2020]). Further, any preexisting defect with the pipe support bracket cannot constitute a basis for liability under Labor Law § 200 and common-law negligence as Defendants cannot be held liable for the dangerous condition which Ipex was hired to address as part of the pipe removal (*see Gurung v Arnav Retirement Trust*, 79 AD3d 969, 970 [2d Dept 2010]; *Hansen v Trustees of M.E. Church of Glen Cove*, 51

---

[10] Contrary to Plaintiff's contentions, Plaintiff's deposition testimony that he received some instructions from Rendon, a Watermark employee, are immaterial to Defendants' liability.

13

AD3d 725, 726 [2d Dept 2008]; *Contrera v Gesher Realty Corp.*, 1 AD3d 111, 112 [1st Dept 2003]; *Skinner v G&T Realty Corp. of N.Y.*, 232 AD2d 627, 627 [2d Dept 1996]).

As Plaintiff and Ipex have failed to submit evidence demonstrating an issue of fact with respect to this prima facie showing, Defendants are entitled to summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence causes of action. As such, the portion of Plaintiff's motion seeking summary judgment on Labor Law § 200 must be denied.

### Indemnification, Contribution, and Insurance

With respect to Defendants' contractual indemnification cause of action as against Watermark, the indemnification provision of Brooklyn Tabernacle's contract with Watermark contains a broadly worded provision requiring Watermark to indemnify Brooklyn Tabernacle and Thor[11] for damages and costs, including attorney's fees, "caused by, resulting from, arising out of or occurring in connection with the execution of the Work" (Brooklyn Tabernacle/Watermark Contract § 13.1). Defendants have demonstrated their prima facie entitlement to summary judgment for contractual indemnification by showing, as discussed above with respect to plaintiff's Labor Law § 200 and common-law negligence causes of action, that they were not negligent, that their liability would be vicarious only, and that the accident arose out of or in connection with the execution of Watermark's work which it had subcontracted to Ipex (*see Cedillo v Nautilus Realty Ltd. Partnership*, 219 AD3d 1300, 1301-1302 [2d Dept 2023];

---

[11] Thor is sufficiently identified in the contract as an intended beneficiary of the indemnification provision when article 13 (the indemnification provision) and article 19 (identifying the parties to the Brooklyn Tabernacle's lease) are read together.

**14**

*Mogrovejo v HG Hous. Dev. Fund Co., Inc.*, 207 AD3d 461, 463 [2d Dept 2022]; *De Souza v Empire Tr. Mix, Inc.*, 155 AD3d 605, 605-606 [2d Dept 2017]; *Tobio v Boston Props., Inc.*, 54 AD3d 1022, 1024 [2d Dept 2008]; *Scott v 122 East 42 St., LLC*, 34 Misc 3d 133 [A], 2012 NY Slip Op 50358, *10-11 [U] [Sup Ct, Queens County 2012]).

Watermark, in opposition, failed to demonstrate a factual issue. Contrary to Watermark's contention, the indemnification provision does not condition Defendants' entitlement to indemnification on a finding of negligence. Watermark did not show that the motion is premature and that further discovery might lead to relevant evidence nor that facts essential to justify opposition to the motion were exclusively within the knowledge and control of defendants (*see Valencia*, 219 AD3d at 545-546; *Robinson*, 115 AD3d at 929).

With respect to Defendants' contractual indemnification claims as against Ipex, the contract between Watermark and Ipex provides, as is relevant here, that "[t]o the fullest extent permitted by law, the Subcontractor agrees to indemnify, defend and hold harmless the Contractor *as well as all parties listed below as additional insureds . . .* from any and all claims . . . arising out of or in connection with or as a result or consequence of the performance of the Work of the Subcontractor" (Watermark-Ipex Contract Article 14). This contract specifically identifies Watermark as the contractor, Ipex as the subcontractor, and "Brooklyn Tabernacle" as the owner. Although there is no provision following the indemnification provision or in the rider listing parties listed as additional insureds, the insurance section of the agreement specifically identifies the "Owner" as a party that must be named as an additional insured on the commercial general liability

15

policy (Watermark-Ipex Contract § 13.2.3). Thor, however, is not mentioned anywhere in the contract.

The right of Defendants, who are not in direct privity of contract with Ipex, to obtain contractual indemnification turns on the terms of Watermark and Ipex's indemnification provision (*see Velasquez v Mosdos Meharam Brisk of Tashnad*, 189 AD3d 1655, 1657 [2d Dept 2020]). A promise to indemnify "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances" (*Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491-492 [1989]; *Leon-Rodriguez v Roman Catholic Church of Sts. Cyril & Methodius*, 192 AD3d 883, 887 [2d Dept 2021]). Assuming that "Brooklyn Tabernacle," identified as the owner, and Brooklyn Tabernacle Foundation, Inc., are the same entity, the fact that there were no entities listed in the language stating that "[c]ontractor *as well as all parties listed below as additional insureds*" creates some ambiguity as to the parties' intentions. As such, there issues of fact exist as to whom the parties' intended to indemnify. This requires denial of both the portion of Defendants' motion and Ipex's cross-motion as they relate to Brooklyn Tabernacle.

Thor, however, is not mentioned in the Watermark-Ipex contract; the contract identifies Brooklyn Tabernacle as the owner, and nothing else in the contract's language suggests that Thor is a third-party beneficiary of the indemnification provision (*see Cordova v Town of Islip*, 131 AD3d 1093, 1095 [2d Dept 2015]; *Naughton v City of New York*, 94 AD3d 1, 12 [1st Dept 2012]). Accordingly, Ipex is entitled to summary

16

[* 16]

judgment dismissing Thor's contractual indemnification claim against it and Defendants' motion must be denied as to Thor.

Although Ipex's notice of cross-motion indicates that Ipex seeks dismissal of Thor's third-party complaint and Brooklyn Tabernacle's second third-party complaint as against it, Ipex does not address Thor's and Brooklyn Tabernacle's respective breach of contract claims based on Ipex's alleged failure to name them as additional insureds. As such, Ipex has failed to demonstrate its prima facie entitlement to summary judgment on those respective third-party and second third-party contract claims.

The portion of Ipex's motion seeking dismissal of Defendants' common-law indemnification and contribution causes of action as against Ipex is denied. While Defendants do not dispute that Ipex was Plaintiff's employer at the time of the accident, Ipex has not submitted any evidence showing that it was the entity that obtained Workers' Compensation Insurance that covers Plaintiff's work. Absent such proof, Ipex has failed to demonstrate its prima facie entitlement to the protections of Workers Compensation Law § 11 and thus to the dismissal of the contribution and common-law indemnification claims against it (*see Boles v Dormer Giant, Inc.*, 4 NY3d 235, 239 [2005], *Poulin v Ultimate Homes, Inc.*, 166 AD3d 667, 674 [2d Dept 2018]; *cf. Reinoso v Ornstein Layton Mgt., Inc.*, 34 AD3d 437, 438 [2d Dept 2006]).[12]

---

[12] The court notes that Defendants, Ipex, and Watermark each fail to address how the indemnification and contribution determinations are impacted by the above noted Workers' Compensation Board determination that finds plaintiff was employed by Watermark at the time of the accident and that it was Watermark's Workers' Compensation insurance carrier that was responsible for the Worker' Compensation awards (*see Velazquez-Guadalupe v Ideal Bldrs. & Constr. Servs., Inc.*, 216 AD3d 63, 71-73 [2d Dept 2023]; Workers' Compensation Law § 11 [2]).

17

Based on the foregoing, and for the same reasons discussed above, Ipex has also failed to demonstrate its prima facie entitlement to dismissal of Watermark's cross-claims against it for contractual indemnification, common-law indemnification, breach of contract to obtain insurance, and contribution.

Accordingly, it is

ORDERED that Plaintiff's motion (motion sequence number 3) is granted to the extent that he is awarded partial summary judgment on his Labor Law § 240 (1) cause of action. Plaintiff's motion is otherwise denied; and it is further

ORDERED that Defendants' motion (motion sequence number 5) is granted to the extent that they are awarded summary judgment on their contractual indemnification claims as against Watermark. The motion is otherwise denied; it is further

ORDERED that Defendants' cross-motion to dismiss the complaint is granted only to the extent that Plaintiff's Labor Law §§ 200 and 241 (6) and common-law negligence causes of action are dismissed as against them. Defendants' cross-motion is otherwise denied; and it is further

ORDERED that Ipex's cross-motion for summary judgment dismissing Plaintiff's complaint (motion sequence number 6) is granted to the extent that Plaintiff's Labor Law §§ 200 and 241 (6) and common-law negligence causes of action are dismissed as against it. Ipex's cross-motion is otherwise denied; and it is further

ORDERED that Ipex's cross-motion for summary judgment dismissing the third-party and second third-party complaints as against it (motion sequence number 7) is

18

granted solely to the extent that Thor's contractual indemnification claim against Ipex is dismissed. Ipex's cross-motion is otherwise denied.

This constitutes the decision and order of the court.

ENTER

J.S.C.

HON. HEELA D. CAPELL, J.S.C.

19

[* 19]